

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

June 27, 1960

Mr. Ramie H. Griffin
Criminal District Attorney
Beaumont, Texas

Opinion No. WW-866

Re: Payment of auditing or
accounting fees under a
tax remission act.

Dear Mr. Griffin:

You have requested an opinion from this Department
on the following question:

"May the corpus of the fund set up
under Acts 1929, 41st Legislature, page
656, chapter 292, as amended by Acts 1941,
47th Legislature, page 1308, chapter 584
and Acts 1945, 49th Legislature, page 615,
chapter 353 for the benefit of the City of
Port Arthur be reached to pay expenses of
an audit required to be made annually by
said Act and for which no funds have been
allocated?"

Section 1 of the above mentioned Act, (which is
codified in the historical note found under Article
6830, Vernon's Civil Statutes) provides in part:

"Commencing with the fiscal year begin-
ning September 1, 1929, and ending August 31,
1961, there be and hereby are donated and
granted by the State of Texas to the City of
Port Arthur, Texas, situated in Jefferson
County, Texas, eight-ninths (8/9) of the net
amounts of the state ad valorem taxes collect-
ed on all property, both real and personal,
in Commissioner's Precinct No. 2 of Jefferson
County, Texas, as it existed on January 1, 1945,
which shall be ascertained and apportioned as
now provided by law; . . ."

Section 2 provides that the Collector of Taxes of
the County shall make a monthly report to the Comptroller

showing each and every item of State ad valorem taxes collected by him upon the property in Precinct No. 2. He shall present such report together with the tax receipt stubs to the County Clerk, who shall within ten (10) days compare the report with the stubs, and if the same agrees as regards names, dates and accounts, the Clerk shall certify to its correctness for which <u>he</u> <u>shall be paid by the Commissioners Court</u>, Twenty-five (25¢) cents for each certificate and Twenty-five (25¢) cents for each two hundred (200) taxpayers named in said report.

Section 4 provides in part:

"The municipal authorities of the City of Port Arthur, Texas, shall, on the 1st day of January of each year, cause to be made an itemized statement, under oath and in triplicate, showing the amount of money received by the City of Port Arthur, Texas, under this Act, and how, to whom, and for what purpose the same has been expended. One copy of such statement after having been audited shall be forwarded to and filed by the County Clerk of Jefferson County, Texas, as hereinafter provided, and the other to the Comptroller of Public Accounts. The said statement shall be sworn to by the treasurer of said City, and the correctness thereof shall be certified by an <u>auditor appointed</u> <u>by the Commissioners Court of Jefferson County</u>, <u>Texas</u>, who shall, while auditing said statement, have before him all vouchers upon which expenditures have been made from said fund. . . ." (Emphasis added).

Section 5 provides in part:

"The moneys herein and hereby granted and donated to the City of Port Arthur, Texas, are declared to be <u>trust funds for the purpose</u> <u>of aiding said City in paying the interest upon</u> <u>and principal of and providing a sinking fund</u> <u>for an issue or issues of bonds heretofore or</u> <u>hereafter issued</u>, the proceeds of which bonds have been or are to be used exclusively in constructing and maintaining seawalls, breakwaters,

shore protections and primary drainage
systems in order that said city be protect-
ed from calamitous overflows and storm waters;
. . . <u>The use and diversion of such moneys
for any other purpose whatsoever is hereby
prohibited; . . .</u>" (Emphasis added).

The Legislature declared that the moneys donated
by this Tax Remittance Act shall be a trust to be used
for a threefold purpose only; i.e., to provide a sink-
ing fund for, pay interest upon and the principal of
certain bonds issued or to be issued. It expressly
states that the use of such moneys or corpus <u>for any
other purpose whatsoever</u> is prohibited. The payment
from these funds for the expense of an audit could
certainly not be classified under one of the above
named categories. Therefore, your question is answer-
ed in the negative.

The State, while donating these funds to the City
of Port Arthur, provides various "check-points" to
ascertain whether or not the trust is being properly
administered. It is the duty of certain county offic-
ials to see that this "checking" is accomplished.
Section 4 of the above Act requires the Commissioners
Court to appoint an auditor to audit an annual state-
ment made by the municipal authorities of the City.
The Act is silent as to just who should bear the ex-
pense of the audit, thus your opinion request. Section
2, however, expressly states that the Commissioners
Court shall pay the County Clerk for checking monthly
reports made by the Collector of Taxes in regard to
this fund.

In view of this and the fact that it is the dele-
gated duty of the Commissioners Court to appoint or
employ the auditor, we are of the opinion it was the
intent of the Legislature that the expense of such an
audit should be paid by the Commissioners Court of
Jefferson County.

## SUMMARY

The corpus of the fund set up under Acts
1929, 41st Leg., p. 656, ch. 292, as

amended by Acts 1941, 47th Leg., p. 1308,
ch. 584 and Acts 1945, 49th Leg., p. 615,
ch. 353 for the benefit of the City of
Port Arthur may not be used to pay the
expense of an annual audit required by said
Act. It is an expense that should be paid
by the Commissioners Court of Jefferson
County.

Very truly yours,

WILL WILSON
Attorney General of Texas

By James M. Farris
Assistant Attorney General

JMF:hb

APPROVED:

OPINION COMMITTEE
J. C. Davis, Chairman

Byron Fullerton
Charles D. Cabaniss
C. Dean Davis
Robert A. Rowland

REVIEWED FOR THE ATTORNEY GENERAL
BY Leonard Passmore